UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Strio Consulting, Inc.,

    Plaintiff,

v.

Rocket Power, Inc.,

    Defendant.

No. 19-cv-01048−ECT−BRT

**ANSWER AND COUNTERCLAIM**

Defendant RocketPower, Inc. ("RocketPower"), for its answer and defenses to the Complaint filed by Plaintiff, admits, denies, and states as follows below. Except as expressly admitted herein, RocketPower denies the allegations of Strio's Complaint.

### FIRST DEFENSE

RocketPower asserts that pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

RocketPower hereby answers and responds to the separately numbered allegations contained in the Complaint as follows:

### JURISDICTION AND VENUE

1.     Admit.

2.     Admit.

3.     Deny.

## FACTUAL ALLEGATIONS

4. RocketPower admits that Strio is a Minnesota corporation and that Caleb Fullhart is Strio's CEO. RocketPower lacks information and belief sufficient to either admit or deny the remaining allegations contained in paragraph 4 of the Complaint and therefore denies the same.

5. RocketPower lacks information and belief sufficient to either admit or deny the allegations contained in paragraph 5 of the Complaint and therefore denies the same.

6. The allegation that Strio's employees are subject to employment agreements governed by Minnesota law constitutes a legal conclusion requiring no response and RocketPower denies the same. RocketPower lacks information and belief sufficient to either admit or deny the remaining allegations contained in paragraph 6 of the Complaint and therefore denies the same.

7. Admit.

8. Admit.

9. Admit.

10. RocketPower admits that Caldwell became aware of Strio in 2017 and thereafter contacted Fullhart to discuss the services Strio provides. RocketPower lacks information and belief sufficient to either admit or deny the remaining allegations contained in paragraph 10 of the Complaint and therefore denies the same.

11. Admit.

12. RocketPower admits that it entered into an informal verbal agreement with Strio whereby Strio would provide back office and employee support services for joint

employees of RocketPower and Strio who are placed by RocketPower with RocketPower's clients, which include companies that are testing self-driving cars. RocketPower admits that it agreed to compensate Strio on a shared cost/shared profit basis. RocketPower denies that it assigned any internal or prior Strio employees to fill personnel needs for its clients. RocketPower denies all allegations not specifically admitted in paragraph 12 of the Complaint.

13. RocketPower admits that it reached an informal verbal agreement with Strio whereby Strio would provide employee back-office support services for the joint employees of RocketPower and Strio and that RocketPower would share equally with Strio the cost of Strio providing its services to RocketPower, including Strio processing payroll for RocketPower and Strio's joint employees, and that Strio would be compensated for its services on a shared cost/shared profit basis, resulting from the joint employees of RocketPower and Strio. RocketPower denies that Strio has any contractual relationships with any of RocketPower's clients. RocketPower denies all allegations not specifically admitted in paragraph 13 of the Complaint.

14. RocketPower admits that it is solely responsible for invoicing its clients for the services provided by the joint employees of RocketPower and Strio at an hourly or flat rate. RocketPower denies that it is obligated to pay Strio prior to RocketPower receiving payment from its clients. RocketPower denies that it is required to pay Strio for any profits until there has been an accounting to determine if any profits have been earned. RocketPower denies all allegations not specifically admitted in paragraph 14 of the Complaint.

15. The Strio invoices speak for themselves and RocketPower denies any characterization of those documents as set forth in paragraph 15 of the Complaint. RocketPower denies that the invoices indicate payment was to be made in Minnesota. RocketPower denies all allegations not specifically admitted in paragraph 15 of the Complaint.

16. RocketPower admits that the parties set up two joint accounts to facilitate in and out cash flows related to compensating Strio for its services on a shared cost/shared profit basis, resulting from the joint employees of RocketPower and Strio. RocketPower admits that the two joint accounts were set up at Wells Fargo in two separate branches, one in Minnesota and one in California. RocketPower denies all allegations not specifically admitted in paragraph 16 of the Complaint.

17. RocketPower admits that it deposited funds into one or both of the joint accounts to compensate Strio for its services on a shared cost/shared profit basis, resulting from the joint employees of RocketPower and Strio. RocketPower denies all allegations not specifically admitted in paragraph 17 of the Complaint.

18. RocketPower admits that it worked with Strio employees to complete some administrative functions, primarily staffing and payroll, for purposes of providing services to RocketPower clients. RocketPower denies all allegations not specifically admitted in paragraph 18 of the Complaint.

19. RocketPower admits that it met with Strio representatives and employees in Minnesota in 2018. RocketPower denies all allegations not specifically admitted in paragraph 19 of the Complaint.

20. Deny.

21. RocketPower admits that it collected payment from its clients and that the revenue it has collected is accurately reflected in its books and bank transaction data. RocketPower denies that it failed to timely pay Strio or to distribute any profits to Strio. RocketPower denies all allegations not specifically admitted in paragraph 21 of the Complaint.

22. Deny.

23. Deny.

24. Deny.

25. Deny.

26. Deny.

## COUNT ONE
## BREACH OF CONTRACT

27. In response to paragraph 27 of the Complaint, RocketPower incorporates by reference its answers to the allegations contained in paragraphs 1-26 of the Complaint, as if fully set forth herein.

28. Deny.

29. Deny.

30. Deny.

31. Deny.

## COUNT TWO
## UNJUST ENRICHMENT

32. In response to paragraph 32 of the Complaint, RocketPower incorporates by reference its answers to the allegations contained in paragraphs 1-31 of the Complaint, as if fully set forth herein.

33. Deny.

34. Deny.

35. Deny.

## COUNT THREE
## CIVIL THEFT AND CONVERSION

36. In response to paragraph 36 of the Complaint, RocketPower incorporates by reference its answers to the allegations contained in paragraphs 1-35 of the Complaint, as if fully set forth herein.

37. Deny.

38. Deny.

39. Deny.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of waiver, estoppel, release, consent, payment, license, and/or laches.

## FOURTH DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands and by Plaintiff's own inequitable and/or fraudulent conduct.

## FIFTH DEFENSE

Plaintiff's claims are barred, in whole or in part, by the doctrines of setoff and/or recoupment.

## SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because they are without merit and are not brought or asserted in good faith, and Defendant is, therefore, entitled to an award of reasonable attorneys' fees pursuant to 28 U.S.C. § 1927, the inherent power of the District Court, or other applicable law.

## SEVENTH DEFENSE

Plaintiff's claims are barred by the doctrine of the first breaching party.

## EIGHTH DEFENSE

Plaintiff's claims are barred by the doctrines of mistake, frustration of purpose, impossibility, and/or impracticability.

## NINTH DEFENSE

Plaintiff's claims are barred by payment, release, consent, license, and/or accord and satisfaction.

## TENTH DEFENSE

Plaintiff's claims are barred by statute.

## ELEVENTH DEFENSE

Plaintiff's claims are barred by lack of or absence of injury, or actual, realized damages.

## TWELFTH DEFENSE

Plaintiff's claims for damages are barred because Plaintiff failed to mitigate its damages, if any.

## THIRTEENTH DEFENSE

Plaintiff's claims are barred to the extent they are subject to an agreement to arbitrate between the parties.

## FOURTEENTH DEFENSE

Defendant states that this action should be dismissed for improper venue or forum. In the alternative, this action should be transferred to the United States District Court for the Northern District of California, or other district court where venue is proper.

## FIFTEENTH DEFENSE

Defendant states that there may be additional defenses which are unknown at this time and, therefore, reserves the right to amend its responses if additional defenses become known at a later date.

## DEFENDANT/COUNTERCLAIM PLAINTIFF ROCKET POWER INC.'S COUNTERCLAIM AGAINST STRIO CONSULTING, INC.

Defendant/Counterclaim Plaintiff, RocketPower hereby counterclaims and alleges against Plaintiff/Counterclaim Defendant Strio as follows:

1. RocketPower, Inc. is a Delaware Corporation, with its primary place of business located at Two Embarcadero Center, San Francisco, California.

2. Strio Consulting, Inc., is a Minnesota corporation with its primary place of business located at 1390 Neal Avenue North, Lake Elmo, Minnesota.

3. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is diversity between the parties and the amount in controversy exceeds $75,000.

**GENERAL ALLEGATIONS**

4. RocketPower provides talent solutions to rapidly growing companies by: 1) providing recruiting process outsourcing/contract recruiters; 2) providing outsourced/contract staffing for hourly positions such as autonomous vehicle operators and customer service specialists; and 3) executive search services.

5. Strio is a consulting business that provides back office services for RocketPower and RocketPower's clients including payroll, employee benefits, and related services.

6. RocketPower establishes the relationships and contracts with clients who need workers.

7. RocketPower's clients contract with RocketPower for assistance with finding and hiring, placing, managing, and supervising workers to meet their business needs.

8. In 2017, RocketPower's business was growing quickly and to meet demands of the rapidly growing business, RocketPower and Strio began discussing a potential business relationship.

9. During their negotiations, RocketPower and Strio reached a verbal "shared cost/shared profit" agreement (the "Agreement").

10. Pursuant to the terms of the Agreement, Strio agreed to provide back office services including processing payroll, taxes and benefits, and other services for the workers RocketPower has placed with its clients.

11. The workers subject to the Agreement are considered to be joint employees of RocketPower and Strio.

9

12. RocketPower and Strio agreed that the two companies would equally split the costs, including wages, taxes, benefits, and other expenses. In exchange for Strio sharing the costs for the joint employees, RocketPower agreed that it would split the profits from its contracts with its clients equally with Strio.

13. To facilitate in and out cash flows related to compensating Strio for its services, the companies opened a joint account at two separate Wells Fargo branches, one in Minnesota and one in California.

14. Strio and RocketPower agreed that Strio would estimate payroll and then invoice RocketPower for its projected share of the costs including wages, taxes, and benefits, and other services, prior to each upcoming pay period.

15. In order to get compensated and reimbursed for its share of the costs, Strio is required to invoice RocketPower its projected share of the costs prior to each pay period.

16. RocketPower then deposits its share of the costs in the joint bank account.

17. The Agreement does not obligate RocketPower to "front" costs including wages, taxes, and benefits, or any of the companies' shared costs.

18. Rather, RocketPower is obligated to transfer funds into the joint account only after it has received an invoice from Strio and after RocketPower has received payment from its clients for the services the joint employees have provided to RocketPower's clients.

19. The Agreement also provides that Strio is not entitled to its share of the profits until the companies have performed an accounting to reconcile the actual costs incurred by the two companies, including wages, taxes, and benefits, and other service expenses.

20. When RocketPower and Strio began their relationship, the nature of RocketPower's contracts involved finding and placing higher skilled workers that generated a high profit margin.

21. As RocketPower's business grew, it began providing its clients with a higher volume of lower skilled employees, which resulted in a lower profit margin.

22. When profit margin began decreasing, RocketPower's founder, Mathew Caldwell, approached Strio's CEO, Caleb Fullhart, about renegotiating the terms of their agreement.

23. Mr. Fullhart rejected Mr. Caldwell's request to renegotiate the terms of their agreement.

24. On November 30, 2018 and December 14, 2018, Strio failed to make payroll for at least 20 joint employees of RocketPower and Strio.

25. To maintain continuous business operations, RocketPower had to step in and pay some of the joint employees directly via PayPal.

26. On May 10, 2019, Strio estimated that RocketPower's share of the projected costs for the upcoming pay period was $438,000.

27. On May 13, 2019, Strio informed RocketPower that it has insufficient funds to meet payroll and demanded that RocketPower deposit an additional $18,000 because Strio did not have sufficient funds to make the upcoming payroll.

28. RocketPower was concerned that if it failed to meet Strio's demand for additional funds to meet payroll, RocketPower would be at risk of breaching its contractual obligations to its clients.

29. In response to Strio's threat that it would miss payroll, RocketPower deposited an additional $45,059.12 into the companies' joint account on or about May 13, 2019, to avoid disrupting and damaging its business and client relationships.

30. Pursuant to the Agreement, RocketPower is only obligated to pay Strio 50% of the shared costs for each pay period including wages, taxes, benefits, and other expenses.

31. Upon information and belief, RocketPower estimates that cumulative cost of paying taxes and benefits to RocketPower and Strio's joint employees amounts to an additional 15% on top of the employees' wages.

32. Despite this, RocketPower has been consistently funding the full cost of taxes and benefits at rate that is approximately 20% above their joint employees' wages for a given pay period.

33. As a result, in order to avoid disrupting the service RocketPower is contractually obligated to provide its clients, RocketPower has consistently funded approximately 120% of RocketPower's and Strio's wages (and 100% of the cost), rather than providing 50% of the actual shared costs that it is contractually obligated to pay to Strio.

34. As a result, RocketPower has paid Strio approximately $450,000 in additional taxes and benefits that Strio was not entitled to receive.

35. In addition, RocketPower has also been paying 100% of all joint employee expenses, including wages, which amounts to approximately $5,000,000 to $6,000,000 since the companies began doing business together.

**FIRST CAUSE OF ACTION**
**BREACH OF CONTRACT**

36. RocketPower incorporates paragraphs 1-35 of its Counterclaim as if fully set forth herein.

37. The Agreement entered into by RocketPower and Strio is a fully enforceable contract.

38. Strio has materially breached the agreement by, among other things, failing to pay its half of the costs of RocketPower and Strio's joint employees, by failing to make payroll, and by threatening RocketPower that it will be unable to make payroll unless RocketPower pays greater than 100% of anticipated payroll costs for a given pay period.

39. RocketPower has fulfilled its contractual obligations by, among other things, paying the entire costs for several pay periods to avoid missing payroll, by paying the joint employees from the RocketPower PayPal account, and by paying more that it is contractually obligated to pay Strio.

40. As a direct and proximate result of Strio's breaches of the Agreement, RocketPower has been damaged by approximately $6,000,000, which is inclusive of approximately $500,000 in excess tax and benefit payments, and approximately $5,500,000 in excess wage payments to the joint employees.

### SECOND CAUSE OF ACTION
### UNJUST ENRICHMENT

41. RocketPower incorporates paragraphs 1-40 of its Counterclaim as if fully set forth herein.

42. Strio has knowingly received and been unjustly enriched by RocketPower paying Strio approximately 120% of the wages of the joint employees, which greatly exceeds the amount Strio was entitled to receive from RocketPower.

43. Strio has been unjustly enriched by unfairly receiving and retaining the excess payments RocketPower has provided Strio.

44. As a direct and proximate result of Strio's unjust enrichment, RocketPower has been damaged in the amount of approximately $6,000,000, which includes approximately $500,000 in excess tax and benefit payments, and approximately $5,500,000 in excess wage payments that RocketPower has made to Strio.

## THIRD CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

45. RocketPower incorporates paragraphs 1-44 of its Counterclaim as if fully set forth herein.

46. Strio has breached the implied covenant of good faith and fair dealing by, among other things, missing payroll, by demanding that RocketPower front more than 50% of the shared costs for several pay periods, and by threatening that RocketPower that Strio will not make payroll unless RocketPower deposits additional funds in the joint account prior to the date that payroll is due.

47. Strio's demands have had the effect of threatening to destroy RocketPower's business along with its client relationships, by threatening to harm RocketPower and Strio's joint employees, and by disregarding the terms of Strio's agreement with RocketPower.

48. As a direct and proximate result of Strio's breach of the implied covenant of good faith and fair dealing, RocketPower has been damaged in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
## CIVIL THEFT AND CONVERSION

49. RocketPower incorporates paragraphs 1-48 as if fully set forth herein.

50. Strio has unlawfully taken possession of funds belonging to RocketPower and has wrongfully deprived RocketPower of the use of its property in violation of Minn. Stat. § 604.14.

51. Strio has willfully interfered with, and retained complete possession of funds which RocketPower has the legal right to possess and use and thereby converted and deprived RocketPower of the use of that property.

52. As a direct and proximate result of Strio's theft and conversion of RocketPower's funds and property, RocketPower has been damaged in an amount in excess of $6,000,000 to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant/Counterclaim Plaintiff, RocketPower respectfully requests as follows:

1. That Plaintiff/Counterclaim Defendant, Strio's Complaint and all counts and cause of action therein, be dismissed with prejudice;

2. That the court enter judgment in favor of Defendant/Counterclaim Plaintiff RocketPower in an amount in excess of $6,000,000 to be determined at trial and awarding RocketPower's costs and disbursements as permitted by law; and

3. Grant any further relief that the court deems just and equitable.

Dated: May 24, 2019                    Respectfully submitted,

**ANTHONY OSTLUND
BAER & LOUWAGIE P.A.**


*s/Courtland C. Merrill*
Courtland C. Merrill (#311984)
3600 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: 612-349-6969
Facsimile: 612-349-6996
cmerrill@anthonyostlund.com

   and

Lisa R. Petersen (pro hac forthcoming)
Cohne Kinghorn
111 East Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: 801-415-0121
Facsimile: 801-363-4378
lpetersen@ck.law

*Attorneys for Defendant RocketPower, Inc.*