## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Strio Consulting, Inc.,<br>a Minnesota Corporation, | Civil No. 19-CV-01048-ECT-BRT |
| Plaintiff, | |
| v. | **SECOND AMENDED COMPLAINT** |
| RocketPower, Inc.,<br>a Delaware Corporation, | |
| Defendant. | |

RocketPower, Inc.,
a Delaware Corporation,

        Plaintiff,

v.

Strio Consulting, Inc.,
a Minnesota Corporation

        Defendant.

For its Second Amended Complaint against Defendant RocketPower, Inc. ("RocketPower" or "Defendant"), Plaintiff Strio Consulting, Inc. ("Strio"), states and alleges as follows:

### JURISDICTION AND VENUE

1.  Strio is a Minnesota corporation with its registered office address located at 1390 Neal Avenue North, Lake Elmo, MN 55042.

2.      RocketPower is a Delaware Corporation with its registered agent address located at 2035 Sunset Lake Road, Suite B-2, Newark, Delaware 19702 and its registered entity address located at 9000 Crow Canyon Road, Suite 132, Danville, California 94506.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because there is diversity between the parties and the amount in controversy exceeds $75,000.

## FACTUAL ALLEGATIONS

4.      Strio is a Minnesota corporation which supplies staffing solutions to numerous companies over a broad range of industries as well as other services.  Caleb Fullhart ("Fullhart") is Strio's chief executive officer.

5.      Strio is customarily contacted by companies either in need of employees to fill immediate roles within their business, or by companies wishing to employ the services of a professional recruiter to hire individuals for a specific position.

6.      While Strio's employees are currently located in over eighteen (18) U.S. states, Strio's employees are subject to employment agreements governed by Minnesota law.

7.      RocketPower "provides talent solutions to rapidly scaling technology companies."

8.      One example of an area which RocketPower provides staffing is through companies manufacturing and testing autonomous driving vehicles.  RocketPower is

contacted by these companies to locate and provide individuals with the proper credentials to operate their vehicles.

9.      Mathew Caldwell ("Caldwell") is the founder and current Chief Executive Officer of RocketPower.

10.      Caldwell became aware of Strio and its substantial work force in 2017 and thereafter contacted Fullhart to discuss a potential business relationship between Strio and RocketPower.

11.      Caldwell and Fullhart engaged in discussions and, eventually, negotiations in the following months regarding a potential business relationship between RocketPower and Strio.

12.      As a result of these negotiations, Strio and RocketPower entered into a "shared-cost, shared profit" agreement (the "Agreement") whereby Strio would assign its employees to fill personnel needs for RocketPower as part of its work with various clients, including self-driving car road testing projects and targeted short-term recruiting projects.

13.      Pursuant to the terms of this Agreement, which was memorialized in email communications between the companies, Strio and RocketPower would share equally in the cost of Strio providing its employees' services to RocketPower's customers, including payroll expenses, on an ongoing basis and the parties would equally split any profits derived from projects staffed by Strio's employees.

14.    The parties' Agreement further required RocketPower to invoice its customers for the services provided at an hourly or flat rate.  However, under the terms of the Agreement, RocketPower was required to pay its half of the costs of Strio providing labor, as set forth in invoices provided by Strio, regardless of whether it collected from its customers or if the total payout on a given job exceeded the costs.  Additionally, once RocketPower was paid by its clients, it was further required to pay Strio one-half of all profits earned on work performed.

15.    All invoices sent by Strio indicated payment was to be made in Minnesota and the parties agreed all payments would flow through a joint account in Minnesota.

16.    To establish a joint source of funds to facilitate the sharing of costs and profits under the Agreement, RocketPower and Strio opened a joint checking account through Wells Fargo Bank in Minneapolis, Minnesota.

17.    The parties operated under their Agreement throughout the course of 2018 and into 2019, with RocketPower transferring funds into the parties' joint Minnesota account.

18.    In furtherance of their Agreement, representatives of Strio and RocketPower worked together on a daily basis to operate their joint enterprise and complete administrative functions, including hiring, staffing, invoicing, marketing and other functions.

19.     The parties' respective representatives and employees also joined in "all-hands" group meetings at various times in 2018, with the first such meeting occurring in Minnesota in August 2018.

20.     As the parties continued to operate under their Agreement, they were successful in securing clients and Strio always provided the required personnel to complete the work for RocketPower's clients.

21.     RocketPower collected millions in revenue from its clients, as evidenced by bank transaction data shared with Strio, but it nonetheless failed to timely pay to Strio its portion of the cost or distribute any profits earned through its activities.

22.     RocketPower also failed and otherwise refused to pay its half of the cost of providing labor to staff the projects to Strio, forcing Strio to pay the entirety of its payroll expenses despite receiving little or no payments from RocketPower in an effort to avoid having to terminate those individuals' employment with the company.

23.     Upon information and belief, RocketPower and Caldwell have wrongfully withheld and diverted funds rightfully belonging to Strio for their own personal and business use, including Caldwell buying a personal new vehicle and funding other projects and companies in which Strio has no stake.

24.     As a result of RocketPower's failure to remit profits to Strio, as well as its refusal to share in the expenses, as per the parties' Agreement, Strio is currently owed $1,169,238.12 by RocketPower, in addition to RocketPower's half of ongoing payroll expenses.

25.    The sum owed by RocketPower to Strio accounts for the advancement of costs incurred by Strio through satisfying its payroll obligations to its Minnesota employees as well as 50% of the profits unlawfully withheld by RocketPower.

26.    RocketPower's unlawful conduct has directly and proximately resulted in significant monetary damages to Strio, as Strio has been supplying RocketPower with the continuous employment services of its Minnesota employees without payment of just compensation or the agreed-upon reimbursement to Strio for its payroll costs, which is contrary to the parties' Agreement.

27.    Strio had a direct contractual relationship with each of the employees and independent contractors who worked on RocketPower-related projects, and each of its employees and contractors signed written contracts memorializing the terms of the parties' agreements (collectively the "Personnel Agreements") prior to, and as a condition of, their employment or contractor relationship with Strio.

28.    All of the work performed by Strio employees and contractors on RocketPower-related projects which generated revenue for Strio and RocketPower's joint business was done pursuant to those individuals' Personnel Agreements.

29.    Each of the Personnel Agreements contained choice of law clauses which provided that the agreements would be subject to and interpreted under Minnesota law.

30.    Each of the Personnel Agreements contained restrictive covenants which, among other things, prohibited the employees and contractors from working for or with any Strio client or business partner for one year after the termination, for any reason, of

that individual's employment or contract with Strio. The restrictive covenants specifically prohibited these individuals from seeking employment with or otherwise working for RocketPower.

31.     RocketPower had actual knowledge of these Personnel Agreements and the restrictive covenants contained therein.

32.     Notwithstanding, on or about July 1, 2019, RocketPower sent a written communication to all of Strio's employees and contractors assigned to RocketPower-related projects offering each employment with RocketPower in the same role as they were previously performing as an employee/contractor of Strio, and informing those individuals that if they did not resign their employment with Strio and accept RocketPower's offer of employment by midnight on July 2, they would be without a job.

33.     The vast majority of Strio employees who received this communication resigned from Strio and accepted employment with RocketPower in violation of their respective Personnel Agreement.

34.     RocketPower, without justification, tortiously and intentionally procured a breach of Strio's Personnel Agreements by encouraging and aiding Strio's employees and contractors from breaching their agreements under threat of loss of employment.

35.     As a direct and proximate result of RocketPower's conduct, Strio has been damaged, and may continue to be damaged, in an amount to be determined at trial and has suffered irreparable harm to its business.

## COUNT ONE
## BREACH OF CONTRACT

36.     Plaintiff realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

37.     The Agreement entered into by RocketPower and Strio is a fully enforceable contract.

38.     RocketPower has materially breached the parties' Agreement by, among other things, failing to pay its half of the costs for Strio's provision of its employees' services for projects covered by the Agreement and failing to distribute one-half of all profits earned on such projects.

39.     Strio has fulfilled, and continues to fulfill, its obligations under the parties' Agreement.

40.     As a direct and proximate result of RocketPower's breaches of the Agreement, Strio has been damaged in an amount in excess of $1,169,238.12 to be determined at trial.

## COUNT TWO
## UNJUST ENRICHMENT

41.     Plaintiff realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

42.     RocketPower knowingly received employment services from Strio and its Minnesota employees and willfully and unjustly retained all payments and profits generated by such services, including funds which should have been allocated to pay the

costs of providing such services and the profits earned from projects for which services were provided.

43.     RocketPower has been unjustly enriched through its unlawful and unfair retention of all revenue generated through the services provided by Strio and it would be unjust to permit RocketPower to retain those funds.

44.     Through this and other conduct, RocketPower acted with malicious, willful, or reckless disregard for the rights of Strio.  RocketPower either had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the rights of Strio, but nonetheless took actions which resulted in injury to Strio's rights.

45.     As a direct and proximate result of RocketPower's unjust enrichment, Strio has been damaged in an amount in excess of $1,169,238.12, in addition to punitive damages in an amount to be determined at trial.

**COUNT THREE**
**CIVIL THEFT AND CONVERSION**

46.     Plaintiff realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

47.     RocketPower unlawfully took possession of funds belonging to Strio and has wrongfully deprived Strio of the use of its property in violation of Minn. Stat. § 604.14.

48.     RocketPower willfully interfered with, and retained complete possession of, funds which Strio had a legal right to possess and use and thereby converted and deprived Strio of the use of that property.

49.     Through this and other conduct, RocketPower acted with malicious, willful, or reckless disregard for the rights of Strio.  RocketPower either had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the rights of Strio, but nonetheless took actions which resulted in injury to Strio's rights.

50.     As a direct and proximate result of RocketPower's theft and conversion of Strio's funds and property, Strio has been damaged in an amount in excess of $1,169,238.12 to be determined at trial, in addition to punitive damages in an amount to be determined at trial.

## COUNT FOUR
## TORTIOUS INTERFERENCE WITH CONTRACT

51.     Plaintiff realleges and incorporates by reference herein the foregoing allegations as though fully set forth herein.

52.     The Personnel Agreements entered into by Strio with its employees and contractors are fully enforceable agreements with binding and enforceable restrictive covenants preventing those employees and contractors from working as employees of RocketPower.

53.     RocketPower and its CEO, Mathew Caldwell, had actual and/or constructive knowledge of the Personnel Agreements, the restrictive covenants contained

therein, and the fact that Strio required all employees and contractors to sign Personnel Agreements prior to, and as a condition of, their employment or contractor relationship with Strio.

54.     RocketPower intentionally, tortiously and without justification interfered with Strio's Personnel Agreements by, among other things, hiring Strio's employees and contractors, inducing, encouraging, and aiding those employees and contractors to breach their Personnel Agreements by accepting employment with RocketPower, coercing Strio's employees and contractors into agreeing to accept employment with RocketPower, providing those individuals with false and misleading information, defaming and disparaging the character of Strio personnel, and otherwise improperly attempting to procure breaches of the Personnel Agreements.

55.     RocketPower's interference was improper and without justification.

56.     Through this and other conduct, RocketPower acted with malicious, willful, or reckless disregard for the rights of Strio.  RocketPower either had knowledge of facts or intentionally disregarded facts that created a high probability of injury to the rights of Strio, but nonetheless took actions which resulted in injury to Strio's rights.

57.     As a direct and proximate result of RocketPower's tortious interference with Strio's Personnel Agreements, Strio has been damaged in an amount to be determined at trial, has suffered irreparable harm to its business which monetary damages cannot remedy, and is entitled to punitive damages in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Strio Consulting, Inc. respectfully requests that this Court enter judgment in its favor and against Defendant RocketPower, Inc. in an amount in excess of $1,169,238.12 to be determined at trial, award Plaintiff punitive damages, costs, and disbursements and grant whatever other and further relief it deems equitable and just.

**FAFINSKI MARK & JOHNSON, P.A.**

Dated: March 27, 2020                    By:  s/ *Tyler P. Brimmer*

Tyler P. Brimmer (#0392700)
Adina R. Florea (#0395026)
Flagship Corporate Center
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344
Telephone:  952.995.9500
Facsimile:   952.995.9577
tyler.brimmer@fmjlaw.com
adina.florea@fmjlaw.com

**Attorneys for Plaintiff**
**Strio Consulting, Inc.**